NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-4073
_____

MARIO ROLANDO CRUZ AGUSTIN,
                                        Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                        Respondent
_____

On Petition for Review of a Final Order
of the Board of Immigration Appeals
Immigration Judge:  Honorable Frederic G. Leeds
(No. A072-535-656)
_____

Submitted Under Third Circuit LAR 34.1(a)
November 17, 2010
_____

Before:  AMBRO, FISHER, and GREENBERG, Circuit Judges

(Opinion filed: May 12, 2011)
_____

OPINION
_____

AMBRO, Circuit Judge

        Mario Rolando Cruz Agustin, a Guatemalan national with two United States

citizen minor children who has lived in the United States since he fled Guatemala when

he was 12 years old, timely appeals a final removal order by the Board of Immigration

Appeals ("BIA"). The BIA affirmed an immigration judge's ("IJ") decision, after a hearing in 2008, that Agustin was statutorily ineligible for relief under Section 203 of the Nicaraguan and Central American Relief Act ("NACARA"). *See* Pub.L. No. 105-100, 111 Stat. 2160, 2193-2201 (1997), *amended by* Pub.L. No. 105-139, 111 Stat. 2644, 2644-45 (1997). The BIA also affirmed the IJ's denial of asylum,[1] withholding of removal, protection under the Convention Against Torture ("CAT"), and discretionary cancellation of removal under the Immigration and Nationality Act ("INA"), § 240A(b), 8 U.S.C. § 1229b(b).

An application for special-rule cancellation of removal under NACARA is subject to the jurisdiction-stripping provision of 8 U.S.C. § 1252(a)(2)(B). *See* NACARA § 203(b), 111 Stat. 2160, 2198-99. However, § 1252(a)(2)(B) does not prevent us from considering questions of law or constitutional claims. *See* § 1252(a)(2)(D). Questions of law include "not only 'pure' issues of statutory interpretation, but also . . . mixed questions of law and fact." *Barrios v. Holder*, 581 F.3d 849, 856-57 (9th Cir. 2009) (citing *Ramadan v. Gonzales,* 479 F.3d 646, 648 (9th Cir. 2007) (*per curiam*)). Thus, we review Agustin's claims of legal and constitutional error for whether he has shown *prima facie* eligibility for special-rule cancellation of removal.

---

[1] Agustin submitted an asylum application to the former Immigration and Naturalization Service ("INS") on September 24, 1994, when he was 17 years old. On June 12, 2007, the Department of Homeland Security ("DHS") served him with a Notice to Appear, alleging his removability from the United States. He filed an amended asylum application on July 29, 2007. His NACARA petition was signed on September 24, 2007.

Where the BIA adopts the findings of the IJ and also comments on the sufficiency of the IJ's determinations, we review the decisions of the BIA and the IJ. *See Kaita v. Att'y Gen.*, 522 F.3d 288, 296 (3d Cir. 2008).

We grant the petition in regard to Agustin's NACARA claim, vacate, and remand to the BIA for further proceedings.

\* \* \* \* \*

Guatemalan nationals must meet three requirements to be *prima facie* eligible for relief under Section 203 of NACARA. An applicant must demonstrate that he or she (1) first entered the United States on or before October 1, 1990; (2) registered as an ABC class member[2] on or before December 31, 1991; and (3) had not been apprehended at time of entry (or re-entry) after December 19, 1990. *See* 8 C.F.R. § 1003.43(d)(2) (2009).

The IJ stated in his oral decision that "[t]he real issue in this case was whether the respondent entered the United States on or before October 1, 1990." (IJ Op. at 3). Agustin's testimony, three corroborating affidavits, his 2007 interview with an asylum officer, and his NACARA and amended asylum applications, all state that he entered the United States in February 1990. Nevertheless, the IJ made a "negative credibility determination" based on perceived inconsistencies regarding proof that Agustin entered

---

[2] In a 1991 class-action settlement agreement, *American Baptist Churches v. Thornburgh,* 760 F.Supp. 796 (N.D. Cal. 1991) (*ABC*), the INS agreed not to deport Guatemalan and Salvadoran plaintiffs ("ABC class members") and to provide new asylum interviews. NACARA streamlined the processing of many thousands of applications to the INS by ABC class members, who are eligible for special-rule cancellation of removal if they meet NACARA's statutory requirements.

3

the United States before October 1, 1990. (IJ Op. at 4). The IJ repeatedly stated, however, that Agustin would have been eligible for NACARA relief absent the credibility determination on "the [entry date] prong." *Id.* at 4 ("I do want to note that if the respondent is successful in an appeal on this issue I would have found him eligible under NACARA in terms of the merits.").[3]

The IJ's determination, as affirmed by the BIA, that Agustin did not make a *prima facie* case for cancellation of removal under NACARA has several problems. First, the IJ stated in his oral decision that "the economic opportunities in Guatemala . . . are not as advantageous as here in the United States, which is why respondent would have left his country." *Id.* at 5. There is nothing in the record to suggest that Agustin left his country for "economic opportunities" as the IJ speculated, nor did the Government make such an argument at any time in these proceedings. We have held that, in administrative proceedings such as the one at issue here, an alien is entitled to due process. *Abdulai v. Ashcroft*, 239 F.3d 542, 549 (3d Cir. 2001) (citing *Sewak v. INS*, 900 F.2d 667, 671 (3d Cir. 1990)). "[D]ue process requires . . . (1) 'factfinding based on a record produced before the decisionmaker and disclosed to' him or her." *Id.* at 549 (citing *Llana-Castellon v. INS*, 16 F.3d 1093, 1096 (10th Cir. 1994)). Thus, it was legal error for the IJ to base a credibility determination, whether in whole or in part, on his own speculation rather than the record before him. *See, e.g.*, *Dia v. Ashcroft*, 353 F.3d 228, 249 (3d Cir.

---

[3] The IJ later stated that "if [Agustin] is able to overcome these credibility problems . . .[,] I would have found that he would have been successful in his case for NACARA." (IJ Op. at 5).

4

2003) (an adverse credibility determination may not be "based on speculation or conjecture, rather than on evidence in the record") (internal citation omitted); *Lin v. Gonzalez*, 445 F.3d 127, 132 (2d Cir. 2006) ("we will vacate" an adverse credibility determination "if it is based on flawed reasoning, such as speculation or conjecture, or an inappropriately stringent standard").

Second, it goes too far to conflate minor, non-dramatic inconsistencies with purposeful falsehoods. *Cf. Ming Shi Xue v. BIA,* 439 F.3d 111, 125 (2d Cir. 2006) (holding that "an IJ may not rest an adverse credibility finding on non-dramatic putative contradictions or incongruities in an alien's narrative without first giving the applicant a chance to reconcile the testimony"). The IJ stated that Agustin's "own testimony is inconsistent today with the date given by his aunt, his uncle and his friend." (IJ Op. at 7). That characterization is at best an exaggeration of the record. For example, the IJ discredited the affidavit provided by Agustin's friend, Oscar Zepeda-Lucero, because of his description of whom Agustin lived with when he arrived in the United States. Agustin testified that he lived with his uncle Hermelindo upon arrival. According to the IJ, Zepeda-Lucero "said [Agustin] was living with a friend and did not say it was the uncle." *Id.* However, Zepeda-Lucero's affidavit did correctly state that Agustin lived with "Hermelindo," although it described him as a friend rather than an uncle. Administrative Record ("A.R.") at 496. In an affidavit describing events that occurred more than 18 years earlier during a friend's life, this is the kind of "non-dramatic inconsistency" that does not support an adverse credibility determination.

5

More important, the so-called "inconsistent" testimony and affidavits regarding the key issue of Agustin's date of entry encompass dates that span less than a two-week time period, all in early February 1990.[4] *Cf. Perez Muniz v. Att'y Gen.*, 363 Fed. Appx. 973, 974 (3d Cir. 2010) (accepting 1989 entry date of Guatemalan citizen even though his removal petition stated he entered the United States in 1991, after he amended his date of entry and he, his mother, and his sister testified that he entered in 1989). Other purported inconsistencies in the corroborating affidavits are similarly trivial or nonexistent,[5] with the exception of the entry date provided in Agustin's 1994 asylum application discussed below.

Third, the IJ should not have factored the lack of a corroborating affidavit from Agustin's mother into his credibility determination. In so doing, the IJ erroneously

---

[4] The dates in Agustin's testimony and three corroborating affidavits range only from "around February 2nd" to February 10, 1990. Agustin's aunt and uncle both provided affidavits stating that Agustin entered the U.S. on February 10, 1990. A.R. at 493, 495. His friend Zepeda-Lucero's affidavit also gave an entry date of February 10, 1990. An asylum "investigator here or whoever conducted the interview" provided a hand-written entry date of February 15, 1990 in a May 2007 interview that the IJ stated he gave "limited weight." (IJ Op. at 6). Agustin testified that he was "not sure exactly" what date he entered the U.S., although he thought it was "around the 2nd of February" of 1990. A.R at 44. He stated several times that he knew he entered the U.S. before his 13th birthday, which was February 22, 1990. A.R. at 44-45, 70-72. His amended asylum application (signed in 2007) and his NACARA application also provide a February 1990 entry date. The only date outside this two-week period was in Agustin's 1994 asylum application that was prepared when he was a minor, without a guardian present, in a language he did not understand.

[5] Agustin's recounting of events during his childhood that led to his grandparents' decision to send him to the U.S. to escape the civil war was not internally inconsistent, although he described different aspects of the same series of events in his 1994 asylum application (that was filled out for him, in a language he did not speak, when he was a minor) and his amended 2007 application.

6

conflated the lack of a specific piece of corroborating evidence, which relates to whether the evidence before the IJ is sufficient, with lack of credibility. We have made clear that insufficient evidence and a lack of credibility are not legally equivalent. *See, e.g.*, *Chen v. Gonzales*, 434 F.3d 212, 221 (3d Cir. 2005) ("[I]t is clear that the BIA's own rule requires a credibility determination to be independent of an analysis of the sufficiency of an applicant's evidence."); *cf. Abdulai v. Ashcroft*, 239 F.3d 542, 551 n.6 (3d Cir. 2001) ("A failure of proof is *not* a proper ground per se for an adverse credibility determination.") (emphasis in original). Moreover, when the IJ questioned Agustin regarding why his mother was not at the hearing to testify, he explained that "it was not asked of me." A.R. at 97.[6] In addition, an affidavit from Agustin's mother would have been second-hand in nature regarding the critical issue of his entry date, as he consistently testified that his grandparents sent him to the U.S. from Guatemala and his uncle received him upon arrival in Los Angeles. The lack of an affidavit from Agustin's mother was not legally relevant to whether his testimony regarding his entry date was credible.

Finally, the only inconsistent entry date, from Agustin's 1994 asylum application, should not have been given controlling weight merely because that application was signed "under penalty of perjury," as the IJ repeatedly stressed. (IJ Op. at 6-7). Instead, it should have been given *diminished* weight for several reasons. Agustin was a minor when the application was filled out. As he testified before the IJ, a notary completed the

_____

[6] Agustin also informed the IJ that his mother was in Guatemala due to an emergency but that he could obtain an affidavit from her upon her return if the IJ so desired.

application and Agustin had no legal guardian present. The notary filled out the form in English, which Agustin did not understand or read. Moreover, the notary did not read the form back to Agustin in Spanish. A.R. at 60-61. Agustin testified that he "had no idea what was going on," that he "didn't understand" the form, and that he was "just told to sign. I just signed it." A.R. at 77, 73. While the IJ stated that he would take Agustin's age into account, he does not appear to have taken notice that the law distinguishes between minors and adults in many ways, particularly in regard to their capacity to sign legal documents without parental supervision. *See, e.g.*, 3 *Pennsylvania Law Encyclopedia, Minors* § 3 (2007) ("A minor's formal warrant of attorney is absolutely void, and cannot be ratified."); *Doe v. Banos*, 713 F.Supp.2d 404, 410 (D.N.J. 2010) (discussing "legal difficulties surrounding a minor's entry into contractual relations"); *Anspach v. City of Philadelphia*, 630 F. Supp.2d 488, 489 (E.D.P.A. 2008) (an unemancipated minor "does not have the legal capacity to sign [forms regarding prescription medication]"). Under these circumstances, the IJ gave undue weight to the fact that Agustin's 1994 asylum application was signed under penalty of perjury. *Cf. Gui Cun Liu v. Ashcroft*, 372 F.3d 529, 534 (3d Cir. 2004) (reversing where an IJ did not explain why a "presumption" that an adult would be "aware of the contents" of an asylum form he signed was rebutted by other evidence).[7]

---

[7] In *Gui Cun Liu*, as here, the asylum form was filled out by a third-party preparer in English, which the applicant did not speak:

> The IJ relied heavily upon Mr. Liu's statement originally filed with his signed I-589 form (and later retracted by him), in which it was claimed that he had been jailed and fined for failure to comply with

\* \* \* \* \*

We conclude that there were multiple legal errors in the determination that Agustin did not establish *prima facie* eligibility for NACARA relief. If the proper legal standards had been followed, and, in turn, the proper evidence had been considered without speculation substituted for record evidence, an adverse credibility determination regarding Agustin's date of entry would not have been made. Noting the IJ's repeated statement that he would have found Agustin statutorily eligible for NACARA relief absent that determination, we grant the petition with regard to NACARA relief, vacate, and remand to the BIA for further proceedings consistent with this opinion.

---

the one-child policy. A.R. 71-72. The IJ noted that, under 8 C.F.R. § 208.3, Mr. Liu's signature on the form gave rise to a presumption that he was aware of the contents of that application. But the IJ did not explain why this presumption had not been successfully rebutted by other evidence (most notably, the fact that the form is filled out in English, which Mr. Liu does not speak, without listing the name of a third-party preparer, as well as Mr. Liu's testimony regarding the explanation of the statement before the asylum officer: "I said I didn't know what it is").

372 F.3d at 534 (internal citation omitted).