# United States Court of Appeals
## For the First Circuit

No. 11-1138

OTTO AMILCAR GONZALEZ-RUANO,

Petitioner,

v.

ERIC H. HOLDER, JR.,
UNITED STATES ATTORNEY GENERAL,

Respondent.

ON PETITION FOR REVIEW FROM AN ORDER OF THE
BOARD OF IMMIGRATION APPEALS

Before

Lipez, Ripple,[*] and Howard,
<u>Circuit Judges</u>.

<u>Brian Monahan</u> and <u>Ross & Associates</u> on brief for petitioner.
<u>Tony West</u>, Assistant Attorney General, Civil Division, <u>David V. Bernal</u>, Assistant Director and <u>Jesse M. Bless</u>, Trial Attorney, Office of Immigration Litigation, Civil Division, on brief for respondent.

October 31, 2011

---

[*]Of the Seventh Circuit, sitting by designation.

**HOWARD, Circuit Judge**.  Petitioner Otto Amilcar Gonzalez-Ruano is a native and citizen of Guatemala who unlawfully entered the United States in 1989 and has resided here since.  An Immigration Judge (IJ) rejected his request for a special rule cancellation of removal under the Nicaraguan Adjustment and Central American Relief Act (NACARA).  See Pub. L. No. 105-100, § 203, 111 Stat. 2160, 2196-99, amended by Pub. L. No. 105-139, 111 Stat. 2644 (1997).  He seeks review of the decision of the Board of Immigration Appeals (BIA) which affirmed that adverse decision.  We deny the petition in part and dismiss the remainder for lack of jurisdiction.

## I.  BACKGROUND

Enacted in 1997, NACARA amended certain provisions of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) permitting aliens from particular countries, including Guatemala, to seek discretionary relief under prior, more generous statutory standards.  See Peralta v. Gonzales, 441 F.3d 23, 26-27 (1st Cir. 2006) (providing background on the enactment of NACARA); Fieran v. INS, 268 F.3d 340, 343-44 (6th Cir. 2001) (same).  In particular, section 203 of NACARA allows qualified aliens to apply for either suspension of deportation or "special rule" cancellation of removal, depending upon whether the deportation proceedings commenced prior or subsequent to April 1, 1997.  See  Pub. L. No.

105-100, § 203, 111 Stat. 2160, 2196-99; 8 C.F.R. §§ 1240.64-1240.66.

The Department of Homeland Security (DHS) served Gonzalez-Ruano with a Notice to Appear (NTA) in September 2007. It charged him with being removable from the United States because he entered this country without proper admittance. See 8 U.S.C. § 1182(a)(6)(A)(i). He conceded the grounds for removal and applied for a special rule cancellation of removal under NACARA.[1] See 8 C.F.R. §§ 1240.64, 1240.66. To obtain such relief, he was required to "establish by a preponderance of the evidence" that he was both "eligible for . . . special rule cancellation of removal and that discretion should be exercised to grant relief." 8 C.F.R. § 1240.64(a) (emphasis added); see Pub. L. No. 105-100, § 203(b), 111 Stat. 2160, 2198. The general eligibility requirements are a seven-year period of continuous physical presence in the United States with good moral character (preceding the date of the application), and a showing that removal would result in "extreme hardship" to himself, or to his spouse, parent, or child who is a United States citizen or a lawful permanent resident. 8 C.F.R. § 1240.66(b)(2)-(4). For certain qualifying aliens, there is a presumption that deportation or removal would result in extreme hardship, 8 C.F.R. § 1240.64(d)(1), and the burden shifts to DHS to

---

[1] Whether Gonzalez-Ruano met the initial prerequisites for requesting discretionary relief under NACARA is not an issue in this case. See Pub. L. No. 105-100, § 202, 111 Stat. 2160, 2193-94; 8 C.F.R. §§ 1240.60, 1240.61.

rebut that presumption, 8 C.F.R. § 1240.64(d)(2)-(3). Again, as noted, in addition to proving eligibility, the applicant must also establish that favorable discretion should be exercised.

The removal hearing was twice continued in 2008 to allow Gonzalez-Ruano time to secure legal counsel, then scheduled to take place in June 2009. In May 2009, Gonzalez-Ruano filed a memorandum recounting his activities in this country, including his criminal history, and also included legal arguments regarding the proper standard to apply to his relief request. The memorandum referenced, among others, three 1997 Massachusetts convictions: one for willful and malicious destruction of property and two for assault and battery. Gonzalez-Ruano had pled guilty to all three charges.

Five days before the hearing, the DHS amended the original Notice to Appear with Form I-261, detailing new charges based on the 1997 convictions which, the government alleged, comprised "crime[s] involving moral turpitude". See 8 U.S.C. § 1182(a)(2)(A)(i)(I). Gonzalez-Ruano admitted to the fact of convictions, but disputed that the crimes involved moral turpitude.

The moral turpitude designation is important because an alien convicted of such a crime must demonstrate eligibility for NACARA "special rule" relief under a more stringent standard. See 8 C.F.R. § 1240.66(c)(1)-(4). This standard of eligibility requires a ten-year period of continuous physical presence with

good moral character (calculated from the date of the commission of an act or the assumption of a status constituting a ground for removal), and a greater degree of hardship, "exceptional and extremely unusual" rather than "extreme." See 8 C.F.R. § 1240.66(c)(2)-(4). Also, such applicant loses the benefit of the presumption under the hardship prong. See 8 C.F.R. § 1240.64(d). In addition to proving eligibility under the more stringent requirements, the applicant still must also establish "that discretion should be exercised to grant relief." 8 C.F.R. § 1240.64(a).

At the hearing, Gonzalez-Ruano testified about his tumultuous relationships with his purportedly unfaithful first wife and his allegedly unstable second wife.[2] Regarding his first wife, he recalled an incident in which he approached her car (despite the existence of a restraining order) and attacked a male passenger. On another occasion, he again approached her car in violation of a restraining order, reached in and slapped her. When she attempted to drive away he held onto the vehicle door, causing damage. He also admitted to following his first wife on numerous occasions despite a court order directing him to stay away from her. The couple divorced in 2002.

---

[2] Gonzalez-Ruano testified that his first wife began having an intimate affair with another man, and eventually their marriage failed. He also testified that his second wife became violent towards him, and the testimony of his sister and brother recounted the second wife's alleged instability.

-5-

His marriage to his second wife bears similar marks. She secured restraining orders against him as well, and Gonzalez-Ruano admitted to multiple arrests as a result of some domestic disturbances. At the time of the hearing, he was estranged from, though still married to, his second wife. In short, his conduct during his marriages gave rise to several arrests and police incident reports, criminal convictions, and violations of protective orders. Over the years, he also committed various motor vehicle and traffic violations. At the time of the IJ proceeding, Gonzalez-Ruano had an abuse prevention order in place against him, and he faced three state criminal charges, including assault and battery with a dangerous weapon, breaking and entering, and assault.

Testimony established that in this country Gonzalez-Ruano has lived with his brother and sister and their families. He does not have children of his own. He expressed concern to the IJ about his ability to find work in his homeland due to his age, then 54, and to obtain needed medication in the event he is repatriated. While his parents live in Guatemala, they are elderly and Gonzalez-Ruano owns no property there.

Concluding that the conviction for malicious destruction of property qualified as a crime involving moral turpitude, the IJ applied the more stringent eligibility standard under NACARA. The IJ then determined that Gonzalez-Ruano failed to establish the good

-6-

moral character and hardship requisites for eligibility, thus dooming his request for relief. Alternatively, the IJ found that Gonzalez-Ruano did not warrant a favorable exercise of discretion, citing his "long and troubling criminal history, marked by his repeated and continuous mistreatment of his spouses." Finally, the IJ rejected a challenge to the propriety of the timing of Form I-261 which supplemented the NTA.

Gonzalez-Ruano appealed to the BIA, which affirmed the IJ's decision. It ruled that the Massachusetts crime of malicious destruction of property categorically qualified as a crime involving moral turpitude, and thus the IJ was correct to apply the more stringent standard for eligibility. The BIA, however, concluded that it did not need to reach the remaining eligibility factors relating to character and hardship, because it adopted the IJ's reasoning that Gonzalez-Ruano did not warrant a favorable exercise of discretion. It also ruled that the purportedly late filing of Form I-261 did not cause prejudice, and that Gonzalez-Ruano failed to preserve certain arguments before the IJ relative to the status of his Massachusetts crimes (and alternatively ruled that such arguments lacked merit). This petition followed.

## II. ANALYSIS

Our authority to review the BIA's decision in this case is significantly circumscribed. Review of a decision invoking special rule cancellation of removal under NACARA is subject to the jurisdiction-stripping provision codified at 8 U.S.C. § 1252. See Pub. L. 105-100, § 203(b), 111 Stat. 2160, 2198; see also Blandon v. United States, No. 11-10206, 2011 WL 3903408, at *1 (11th Cir. Sept. 7, 2011); Argueta v. Holder, 617 F.3d 109, 111-12 (2d Cir. 2010); Cruz Agustin v. U.S. Att'y Gen., No. 09-4073, 2011 WL 1798070, at *1 (3d Cir. May 12, 2011); Yat v. Holder, 341 F. App'x 990, 991 (5th Cir. 2009); Castro-Saravia v. Ashcroft, 122 F. App'x 303, 304 (9th Cir. 2004). That provision divests federal courts of jurisdiction to review "any judgment regarding the granting of relief" relative to cancellation of removal, 8 U.S.C. § 1229b. See 8 U.S.C. § 1252(a)(2)(B)(i). We do, however, have jurisdiction to consider constitutional claims and questions of law raised in the petition. 8 U.S.C. § 1252(a)(2)(D). Consequently, we cannot review discretionary determinations regarding requests for special rule cancellation of removal under NACARA, absent legal or constitutional error. See, e.g., Argueta, 617 F.3d at 111-12 (decided in the NACARA context); cf. Cruz-Camey v. Gonzales, 504 F.3d 28, 29 (1st Cir. 2007) (holding that the "Attorney General has the discretion to cancel removal, and absent any colorable constitutional issue or question of law, [federal courts] lack

-8-

jurisdiction to review the . . . exercise <u>vel non</u> of that discretion"); <u>Elysee</u> v. <u>Gonzales</u>, 437 F.3d 221, 223 (1st Cir. 2006) (same).

On appeal, Gonzalez-Ruano argues that the merits decision denying him relief is tainted by errors of law and that his due process rights were violated. Many of his specific claims of error relate solely to his eligibility for relief (including the factors of good moral character and hardship). <u>See</u> 8 C.F.R. § 1240.64(a). As noted, however, while the BIA rendered a ruling relating to that prong -- the moral turpitude analysis -- it went no further and ultimately affirmed the IJ's decision on the alternative and independent basis that Gonzalez-Ruano did not warrant a favorable exercise of discretion. <u>See</u> <u>id</u>. We lack jurisdiction to review the IJ's discretionary decision denying relief and, thus, exclusively focus on claims of legal error relative to that discretionary prong.[3] <u>See</u> <u>Berrio-Barrera</u> v. <u>Gonzales</u>, 460 F.3d 163, 167 (noting that where BIA adopts IJ's findings and rulings, federal court treats IJ decision as that of the BIA).

Gonzalez-Ruano's constitutional claim attacks the propriety of the timing of Form I-261 which alleged that the 1997

---

[3] We need not consider Gonzalez-Ruano's additional argument that the time lapse between the 1997 convictions and the final decision of the BIA requires that we remand the matter for further proceedings relative to the good moral character inquiry. This inquiry is strictly tied to Gonzalez-Ruano's potential eligibility for relief, which is not a live issue given that this case turns on the BIA's independent discretionary ground for denying relief.

convictions constituted crimes involving moral turpitude. Even assuming that this claim is colorably related to the BIA's discretionary decision, we conclude that no due process violation occurred. Gonzalez-Ruano asserts that DHS's "eleventh hour" filing of the additional charges was "fundamentally unfair." He does not dispute the government's ability to amend the charges, nor does he have any reasonable basis to do so. See 8 C.F.R. § 1240.10(e); accord 8 C.F.R. § 1003.30; see also De Faria v. I.N.S., 13 F.3d 422, 424 (1st Cir. 1993) (per curiam). Rather, he contends that the timing of Form I-261 failed to provide him with "reasonable notice" and, thus, deprived him of his right to a fair and full hearing and sufficient opportunity to prepare his defense against the new charges. We disagree.

The BIA determined that the legal memorandum Gonzalez-Ruano filed the month preceding the hearing aptly displayed his awareness of both his criminal record and of its potential consequences in advance of the DHS lodging the amended charges. The record bears out this conclusion. Indeed, the supplemental charges directly mirrored information Gonzalez-Ruano provided in that document. The BIA also correctly observed that the IJ offered to continue the June 9 hearing, but Gonzalez-Ruano elected to proceed. Accordingly, the claim of unreasonable notice depriving him of an opportunity to meet the new charges rings hollow. See Magasouba v. Mukasey, 543 F.3d 13, 16 (1st Cir. 2008) (rejecting

-10-

claim of unreasonable notice due to filing of amended charge).

Next, Gonzalez-Ruano sets forth two claims of legal error which arguably relate to the BIA's decision that he did not warrant a favorable exercise of discretion. We briefly address each in turn.

First, Gonzalez-Ruano contends that the disposition of the malicious destruction of property charge does not qualify as a "conviction," because the Massachusetts court did not impose a "punishment, penalty, or restraint on liberty." 8 U.S.C. § 1101(a)(48)(A). He raised this same argument before the BIA, which ruled that he had failed to preserve it during the IJ proceedings. See 8 U.S.C. § 1252(d)(1); Makhoul v. Ashcroft, 387 F.3d 75, 80 (1st Cir. 2004) (alien's argument not raised before IJ is not preserved for appellate review). Yet, here, Gonzalez-Ruano makes no effort to challenge the BIA's ruling on preservation. In any event, we conclude that his argument rests on faulty premises. The statutory language he relies upon applies only when "adjudication of guilt has been withheld." 8 U.S.C. § 1101(a)(48)(A). Yet, the record plainly shows that Gonzalez-Ruano was convicted of the charged crime, via his guilty plea, and that the Massachusetts court ordered probation and restitution with the amount to be determined in a later proceeding. The single case he cites is readily distinguishable. See De Vega v. Gonzales, 503 F.3d 45, 47 (1st Cir. 2007) (alien admitted to facts sufficient for a finding

-11-

of guilt and court issued a continuance without a finding of guilt, contingent on payment of restitution).  This argument warrants no further attention.

We also quickly dispose of the second claim of legal error.  Gonzalez-Ruano contends that the BIA erred in finding his argument challenging the legitimacy of his state court convictions also was not preserved for its review.  Again, he makes no attempt to identify how this argument was preserved before the IJ.  Moreover, the BIA alternatively rejected the merits of his argument, yet he makes no effort to demonstrate how the BIA's analysis is erroneous.  See Gouveia v. I.N.S., 980 F.2d 814, 817 (1st Cir. 1992) (criminal convictions cannot be collaterally attacked during immigration proceedings).  Finally, his convoluted argument rests on the premise that the BIA did not address his due process claim.  This foundation plainly fails because the BIA properly rejected the due process claim.

In the end, Gonzalez-Ruano has failed to demonstrate that the BIA's discretionary decision was tainted with constitutional or legal error.  In rendering its decision that Gonzalez-Ruano did not warrant a favorable exercise of discretion, the BIA fully adopted the reasoning of the IJ.  The discretionary decision to deny relief was based on Gonzalez-Ruano's convictions for assaulting his former wife and maliciously damaging her personal property, incidents resulting in arrests and multiple violations of protective orders

relating to both his former and current spouses, his own admission of stalking his former wife on multiple occasions, and a then-current abuse prevention order. These facts were considered in light of Gonzalez-Ruano's testimony regarding his first wife's alleged infidelity and his second wife's purported battle with depression and behavioral issues. Ultimately, the IJ and BIA determined that Gonzalez-Ruano's criminal history and conduct during his marriages displayed numerous substantial adverse factors which outweighed any favorable factors, causing them to decline to extend him discretionary favor. We lack jurisdiction to review this decision.

## III. CONCLUSION

For the foregoing reasons, we deny the petition in part and dismiss it in part for lack of jurisdiction.

-13-