# United States Court of Appeals
## For the First Circuit

No. 14-2119

MOISÉS ENRIQUE LIMA,

Petitioner,

v.

LORETTA E. LYNCH,[*]
ATTORNEY GENERAL OF THE UNITED STATES,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Torruella, Selya, and Thompson,
Circuit Judges.

Jeffrey B. Rubin and Rubin Pomerleau P.C., on brief for petitioner.

Jennifer R. Khouri, Trial Attorney, Office of Immigration Litigation, Civil Division, U.S. Department of Justice, Benjamin C. Mizer, Principal Deputy Assistant Attorney General, Civil Division, and Jennifer P. Levings, Senior Litigation Counsel, Office of Immigration Litigation, on brief for respondent.

---

[*]    Pursuant to Fed. R. App. P. 43(c)(2), Attorney General Loretta E. Lynch is substituted for former Attorney General Eric H. Holder, Jr. as respondent.

June 21, 2016

**TORRUELLA, Circuit Judge.** Moisés Enrique Lima ("Lima") petitioned this court for review of a final removal order entered by the Board of Immigration Appeals ("BIA"). As Lima's challenge to the underlying discretionary denial of relief under Section 203 of the Nicaraguan Adjustment and Central American Relief Act ("NACARA"), Pub. L. No. 105-100, §§ 201-204, 111 Stat. 2160, 2193-2201, as amended by Pub. L. No. 106-386, § 1510(b), 114 Stat. 1464, 1531 (2000), fails to raise a colorable legal or constitutional claim, we dismiss for lack of jurisdiction.

**I.**

A native of El Salvador now fifty years old, Lima entered the United States via California on or about either September 25, 1989, or October 10, 1989. He filed an application for asylum with the Immigration and Naturalization Service ("INS") in 1992, which he subsequently withdrew. Lima was arrested on various charges in 1992, 1993, 2002, 2003, and 2005. A 1993 arrest led to charges of armed burglary, indecent assault and battery, and attempted rape and resulted in a conviction for assault and battery following a bench trial. After his 2003 arrest, Lima was charged with assault with intent to commit murder, assault and battery with a dangerous weapon, assault and battery, and threat to commit a crime; he pleaded guilty to the latter three charges, receiving probation, which terminated in June 2005.

Lima applied to the United States Citizenship and Immigration Services ("USCIS"), successor to the INS, for permanent residence in December 2005 under the special rule cancellation of removal provision of Section 203 of NACARA. In 2006, USCIS denied his application on the basis of his criminal record.

Lima was placed in removal proceedings in 2007 via a Notice to Appear charging him as removable under the Immigration and Nationality Act, § 212(a)(6)(A)(i), 8 U.S.C. § 1182. An immigration judge ("IJ") rejected his application for NACARA special rule cancellation of removal in October 2009, citing his 2003 conviction for assault and battery with a dangerous weapon,[1] and the BIA dismissed Lima's appeal in October 2010. In November 2010, Lima filed a petition for review and request for stay of removal with this court and a motion to vacate convictions with the Framingham District Court in Massachusetts, arguing that his 2003 counsel did not adequately advise him as to the immigration consequences of his guilty plea and thus claiming ineffective

---

[1] Assault and battery under Mass. Gen. Laws ch. 265, § 15A(b) constitutes a crime of moral turpitude under 8 U.S.C. § 1182(a)(2) and 8 C.F.R. § 1240.66(b). See Thomas v. INS, 976 F.2d 786, 787 (1st Cir. 1992); In the Matter of N-----, 2 I. & N. Dec. 201, 204 (BIA 1944). Such a conviction makes a perpetrator ineligible for special rule cancellation of removal under NACARA. See Mejía v. Holder, 756 F.3d 64, 67 (1st Cir. 2014).

-3-

assistance of counsel under Padilla v. Kentucky, 559 U.S. 356 (2010). The state court vacated his convictions, and in February 2011 the charges were dismissed for failure to prosecute. Lima then filed a motion to voluntarily dismiss his case before this court, and we dismissed his initial petition in March 2011.

A February 2011 motion to reopen BIA proceedings was rejected as untimely and, regarding the evidence of the convictions' vacation, inadequate. A subsequent June 2011 motion for reconsideration that included Lima's motion to vacate the 2003 convictions, however, succeeded in persuading the BIA to vacate its prior decision and remand Lima's case to the IJ for reconsideration. After two continuances, Lima testified before the IJ in August 2013. At the hearing, Lima's account of the events leading to the subsequently vacated 2003 conviction for assault with a deadly weapon differed substantially from police reports from that night. For example, Lima testified that he was not intoxicated, had not been drinking any alcohol, and could not think of a reason that he would have smelled of alcohol or acted intoxicated. In contrast, the police reports indicated that Lima was "highly intoxicated" and that the victim of his assault, Rosaura González, his then-estranged partner and the mother of his then-eight-year-old daughter, told an officer that he was "drunk." Lima offered no explanation for why police would have

-4-

misrepresented his state of sobriety. Lima also denied holding a knife to González's throat or making contact with her, further contradicting the police reports and next-day interview with Lima.

The IJ acknowledged, as the parties had agreed, that Lima was eligible for relief from removal under Section 203 of NACARA, but noted that such relief is discretionary and that, under the REAL ID Act of 2005, Pub. L. No. 109-13, § 101(d)(2), 119 Stat. 231, 304, Lima had to show he merited a favorable exercise of discretion. The IJ found the 2003 police reports to be "probative and reliable." He discounted an affidavit[2] from González stating that she would not testify to the facts contained in the 2003 police reports because González did not appear in person, nor offer an explanation for why she did not appear, and the police reports contradicted her affidavit. The IJ found Lima testified incredibly in several respects, most significantly regarding the 2003 incident, undermining his credibility altogether. The IJ reviewed both positive and negative factors at length, noting that Lima has one child who is a lawful permanent resident and another who is a citizen; that neither child testified for Lima; the length of Lima's residence in the United States; his lack of credibility

---

[2] The affidavit was signed November 11, 2010, and submitted as part of Lima's second motion to reopen proceedings along with his motion to vacate convictions.

-5-

as a witness; discrete instances of negative conduct, contacts with law enforcement, and criminal history, as well as recidivism and refusal to admit culpability; his age at the time of entry and at the time he committed negative conduct; and that one of his children, then eight years old, was nearby during the conduct leading to Lima's 2003 conviction for assault and battery. Finding that the "positive factors" for Lima were "limited" by his lack of credibility and that the "negative factors . . . far outweigh[ed] the positive," the IJ declined to grant Lima relief.

The BIA reviewed the IJ's "factual findings for clear error and all other issues de novo." It found no clear error in the IJ's credibility determination, a factual finding, based on the inconsistencies between the 2003 police reports and Lima's testimony, and affirmed the IJ's decision not to grant discretionary relief.

## II.

"When the BIA adopts the IJ's opinion and discusses some of the bases for the IJ's decision, we . . . review both the IJ's and the BIA's opinions." Ouk v. Gonzales, 464 F.3d 108, 110 (1st Cir. 2006). However, "[r]eview of a decision invoking special rule cancellation of removal under NACARA is subject to the jurisdiction-stripping provision codified at 8 U.S.C. § 1252." González-Ruano v. Holder, 662 F.3d 59, 63 (1st Cir. 2011). Under

-6-

that provision, we may not "review 'any judgment regarding the granting of relief' relative to cancellation of removal," id. (citing 8 U.S.C. § 1229b), but only "constitutional claims and questions of law raised in the petition." Id. (citing 8 U.S.C. § 1252(a)(2)(D)); see also Ramírez-Matías v. Holder, 778 F.3d 322, 326 (1st Cir. 2015); Castro v. Holder, 727 F.3d 125, 128 (1st Cir. 2013). Thus, "we cannot review discretionary determinations regarding requests for special rule cancellation of removal under NACARA, absent legal or constitutional error." González-Ruano, 662 F.3d at 63.

"The traditional rules of evidence do not apply in immigration hearings, and arrest reports historically have been admissible in such proceedings." Henry v. INS, 74 F.3d 1, 6 (1st Cir. 1996) (citations omitted). "[W]hile an arrest, without more, is simply an unproven charge, the fact of the arrest, and its attendant circumstances, often have probative value in immigration proceedings." Id. There is no "black-letter" rule as to the relative probative value of arrest records based on their age. Cf. id. at 6-8. An IJ may determine an applicant's credibility on the basis of the "totality of the circumstances," including "the consistency of [the applicant's] statements with other evidence of record . . . and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency,

-7-

inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor." 8 U.S.C. § 1229a(c)(4)(C). Determinations of credibility, and relative credibility, are factual in nature. Ramírez-Matías, 778 F.3d at 326.

**III.**

The case before us rings familiar: an apparent successor to Ramírez-Matías, in which the petitioner argued "that the IJ bungled the decision on special rule cancellation of removal by relying on hearsay evidence (particularly the police reports) to determine that the petitioner did not deserve a favorable exercise of discretion," giving the reports "too much weight" and "fail[ing] to assess the 'probative value' of the police reports properly" in light of testimony contradicting the reports. 778 F.3d at 326. We labeled his challenge "hopelessly factbound" and sans any "hint of any cognizable constitutional claim or question of law." Id. It is no less true here that "a challenge to the way in which the agency weighed the evidence and balanced negative and positive factors is not a claim that raises a legal question." Id. (citing Santana-Medina v. Holder, 616 F.3d 49, 52-53 (1st Cir. 2010); Elysee v. Gonzales, 437 F.3d 221, 223-24 (1st Cir. 2006)). And that is all that Lima claims here: He argues that the IJ should not have found the 2003 police reports credible and should instead have credited his own testimony and González's affidavit, as a

-8-

result of which, presumably, the IJ would have found more positive factors favoring Lima and granted him relief.  There is, of course, no problem with the IJ's reliance on police reports, <u>Henry</u>, 74 F.3d at 6, nor the BIA's adoption of the IJ's reasoning.  <u>Gonzales</u>, 464 F.3d at 110.  Lima himself concedes that <u>Ramírez-Matías</u> is "on point."[3]  We find Lima's challenge to the IJ's determination of the reports' probative value and the BIA's affirmance does not constitute a legal challenge, thus we do not have jurisdiction.

## IV.

We dismiss this petition for lack of jurisdiction.

**<u>Dismissed</u>**.

---

[3]  Lima asks us to "reconsider" <u>Ramírez-Matías</u>.  Of course, one panel cannot overrule another panel's decision "absent supervening authority or some other singular event," <u>United States</u> v. <u>DePierre</u>, 599 F.3d 25, 31 (1st Cir. 2010), and Lima identifies no such "supervening authority" or "singular event" here.