PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

ANNA MIDI,

*Petitioner,*

v.

ERIC H. HOLDER, JR ., Attorney General,

*Respondent.*

No. 08-1367

On Petition for Review of an Order of
the Board of Immigration Appeals.

Argued: March 24, 2009

Decided: May 12, 2009

Before MICHAEL, MOTZ, and KING, Circuit Judges.

Petition for review denied by published opinion. Judge Motz
wrote the opinion, in which Judge Michael and Judge King
joined.

## COUNSEL

**ARGUED:** David Christopher Drake, JOHNSON & ASSO-
CIATES, PC, Arlington, Virginia, for Petitioner. Andrew B.
Insenga, UNITED STATES DEPARTMENT OF JUSTICE,
Office of Immigration Litigation, Washington, D.C., for
Respondent. **ON BRIEF:** Randall L. Johnson, JOHNSON &

ASSOCIATES, PC, Arlington, Virginia, for Petitioner. Gregory G. Katsas, Assistant Attorney General, Civil Division, M. Jocelyn Lopez Wright, Assistant Director, Office of Immigration Litigation, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

**OPINION**

DIANA GRIBBON MOTZ, Circuit Judge:

Anna Midi, a citizen of Haiti, petitions for review of a Board of Immigration Appeals (BIA) order denying her application for adjustment of status and ordering her removed to Haiti. Midi asserts that the BIA erred as matter of law in concluding that the Child Status Protection Act does not apply to immigrants seeking relief pursuant to the Haitian Refugee Immigration Fairness Act. Alternatively, she argues that the BIA's construction of the Child Status Protection Act violated her constitutional right to equal protection of the law. The Government contends that we lack jurisdiction to hear Midi's claims and that, in any event, the BIA did not err in rejecting Midi's application. Although we have jurisdiction to consider Midi's legal and constitutional claims, her claims fail on their merits. We therefore deny Midi's petition for review.

I.

Midi's petition involves two immigration statutes: the Haitian Refugee Immigration Fairness Act and the Child Status Protection Act.

A.

The Haitian Refugee Immigration Fairness Act of 1998 (HRIFA) provides for non-discretionary adjustment of immigration status for certain Haitian refugees. *See* Haitian Refu-

gee Immigration Fairness Act of 1998, Pub. L. No. 105-277, §§ 901-904, 112 Stat. 2681-538 (codified as amended at 8 U.S.C. § 1255 note (2006)).[1] In general, HRIFA treats these Haitian refugees more favorably than typical asylum applicants. To obtain permanent resident status, a HRIFA applicant need only prove that he began residing in this country and filed for asylum prior to December 31, 1995. HRIFA § 902(a)-(b). Unlike most refugees, a HRIFA applicant need not demonstrate a "well-founded fear of persecution." *See* 8 U.S.C. §§ 1101(a)(42), 1158(b)(1)(A)-(B) (2006). Furthermore, many of the usual grounds for inadmissibility, like illegal entry into the country, do not apply to HRIFA applicants. *See* HRIFA § 902(a)(1)(B); *Jean v. Gonzales*, 435 F.3d 475, 477-78 (4th Cir. 2006).

HRIFA also directs the Attorney General to provide immigration benefits to derivative applicants, i.e., a "spouse, child, or unmarried son or daughter" of a Haitian refugee admitted pursuant to HRIFA. *See* HRIFA § 902(d). The Attorney General must adjust the status of spouses and children of such Haitian refugees upon application. However, if the derivative applicant is an "unmarried son or daughter" of the principal HRIFA applicant—that is, if he or she is 21 years of age or older[2]—the derivative applicant must show continuous presence in the United States beginning not later than December 31, 1995 to obtain an adjustment of status. *Id.*

---

[1]Although Congress amended HRIFA in part through the 2000 reauthorization of the Violence Against Women Act, *see* Pub. L. No. 106-386, § 1511, 114 Stat. 1491, 1532-33, these amendments have no relevance here.

[2]The Immigration and Nationality Act (INA) defines a child, in part, as "an unmarried person under twenty-one years of age." 8 U.S.C. § 1101(b)(1) (2006). HRIFA differentiates between a "child" and an "unmarried son or daughter"; thus, both parties agree that the phrase "unmarried son or daughter" refers to a son or daughter of a HRIFA principal who is both unmarried and 21 years of age or older.

## B.

In 2002, Congress enacted the Child Status Protection Act (CSPA) to provide relief for children who "age-out" of dependent status due to agency processing delays. *See* Child Status Protection Act, Pub. L. No. 107-208, 116 Stat. 927 (codified at 8 U.S.C. §§ 1151, 1153, 1154, 1157, 1158 (2006)). A child "ages out" when she is under 21 years old at the time that her parents apply for an immigration benefit but becomes 21 before the agency acts on the application—thus losing her right to certain immigration benefits. *See Ochoa-Amaya v. Gonzales*, 479 F.3d 989, 992-94 (9th Cir. 2007); *Padash v. INS*, 358 F.3d 1161, 1171-74 (9th Cir. 2004).

To solve this problem, Congress changed the manner of calculating a child's age for certain derivative applicants. The date used to determine a child's age depends on the kind of application that the principal filed. For example, a daughter of an immigrant granted asylum remains a "child" for asylum purposes if she was under 21 at the time that her parent *filed* an asylum application. *See* 8 U.S.C. § 1158(b)(3)(B) (2006). CSPA does not expressly amend or incorporate HRIFA and does not change the general definition of a "child" in the INA. *See id.* § 1101(b)(1).

## II.

## A.

Marius Midi, Anna's father and a Haitian refugee, came to this country and filed for asylum in 1990. On October 21, 1998, Congress enacted HRIFA. Almost a year later, on September 1, 1999, Marius filed an application to adjust his status pursuant to HRIFA. The Department of Homeland Security granted this application on May 14, 2001, awarding Marius permanent resident status. Two months later, on July 21, 2001, the Government paroled Anna Midi into this country for the purpose of seeking adjustment under HRIFA as a

derivative beneficiary of her father. Midi filed her application to adjust status under HRIFA on October 16, 2001, a few months after she entered the country.

Midi was born on August 15, 1980. She was thus nine years old when her father filed his application for asylum, 19 years old when her father filed his HRIFA application, and 20 years old when the Government approved her father's HRIFA application. Although Midi was 20 years old when she entered the United States, she turned 21 before she filed her HRIFA application.

### B.

An Immigration Judge (IJ) denied Midi's application for adjustment of status on December 5, 2005. The IJ held that Midi had to show continuous presence in the United States beginning not later than December 31, 1995, *regardless* of whether CSPA applied to HRIFA applicants. Midi could not do so, given that she did not enter this country until 2001, and the IJ therefore denied her application. The BIA dismissed Midi's appeal on this basis. Because both the IJ and the BIA concluded that the continuous presence requirement applied to Midi even if the applicable statutes classified her as a "child," neither addressed Midi's argument that CSPA applied to her HRIFA application.

Contrary to these holdings, HRIFA clearly states that children under 21 years of age who apply as derivative applicants need not demonstrate pre-1996 continuous presence in this country. *See* HRIFA § 902(d); 8 C.F.R. § 245.15(j) (2008). The BIA thus erred in denying Midi's application on this ground and in failing to address her argument that CSPA applied to her application.

Prior to oral argument in this court, the Government recognized the BIA's error and moved to remand Midi's case to the BIA to determine whether CSPA applied to Midi's HRIFA

application. We granted the Government's unopposed motion. On remand, the BIA addressed the issue and concluded that "[u]fortunately, we cannot find that the CSPA is directly applicable [to Midi]." The BIA reasoned that CSPA amended only particular sections of the INA but did not specifically amend HRIFA.

Midi petitions this court for review of the BIA's order, relying on two arguments. First, she maintains that the BIA erred as a matter of statutory interpretation in concluding that CSPA does not apply to the children of Haitian refugees admitted under HRIFA. Second, she argues that even if we agree with the BIA's statutory interpretation, denying Haitian refugees the protections that CSPA affords to refugees from other nations violates her constitutional right to equal protection of the law. In response, the Government maintains that we do not have jurisdiction to review BIA orders under HRIFA, or, alternatively, that the BIA did not err in denying Midi's application for adjustment of status.

III.

We first address the Government's contention that we lack jurisdiction to review the BIA's order. In support of this argument, the Government relies on a portion of HRIFA that provides: "A determination by the Attorney General as to whether the status of any alien should be adjusted under [HRIFA] . . . shall not be subject to review by any court." HRIFA § 902(f). To construe this provision broadly, as the Government does, would ignore the Supreme Court's directive that courts must construe such jurisdiction-stripping provisions narrowly, so as to avoid substantial constitutional concerns. *See INS v. St. Cyr*, 533 U.S. 289, 299-300 (2001).

Moreover, the REAL ID Act of 2005 specifically grants courts of appeals jurisdiction to review "constitutional claims or questions of law" arising from BIA orders, *notwithstanding* "any other provision of [the INA]." 8 U.S.C. § 1252(a)(2)(D)

(2006). In *Higuit v. Gonzales*, we considered this provision and concluded that it "confers upon courts of appeal a narrowly circumscribed jurisdiction to resolve constitutional claims or questions of law [under the INA]." 433 F.3d 417, 419 (4th Cir. 2006); *see also Saintha v. Mukasey*, 516 F.3d 243, 251 (4th Cir. 2008) (holding that the REAL ID Act provides for judicial review of questions of "statutory interpretation"). Because Congress expressly appended HRIFA as a note to 8 U.S.C. § 1255, an immigration statute within the INA, the REAL ID Act applies here.

Therefore, *Higuit* controls and, in accord with *Higuit*, we have jurisdiction over both of Midi's claims. For Midi presents only two claims: (1) a pure question of law—whether the age-out protections of CSPA apply to HRIFA applicants; and (2) a constitutional question—whether denying Midi CSPA benefits violates her equal protection rights. The REAL ID Act explicitly grants us jurisdiction to hear precisely such questions.[3] Accordingly, we turn to them.

IV.

Midi first alleges legal error in the BIA's determination that CSPA does not apply to HRIFA applicants. Typically, we review such questions of law de novo. *See Dekoladenu v. Gonzales*, 459 F.3d 500, 503 (4th Cir. 2006). However, when the issue turns on an interpretation of the INA—a statute that the BIA administers—we afford the BIA deference under the familiar *Chevron* standard. *See Saintha*, 516 F.3d at 251 (*citing INS v. Aguirre-Aguirre*, 526 U.S. 415, 424 (1999)). Applying *Chevron*, we initially examine the statute's plain

---

[3]We recognize that this holding lies in some tension with Eleventh Circuit opinions finding that HRIFA § 902(f) limits its jurisdiction to "substantial constitutional challenges" only. *Sicar v. Chertoff*, 541 F.3d 1055, 1061-64 (11th Cir. 2008); *Alexis v. U.S. Att'y Gen.*, 431 F.3d 1291, 1294-95 (11th Cir. 2005). But the plain language of the REAL ID Act empowers the federal courts to review not only "constitutional claims" but also "questions of law" arising from BIA orders.

language; if Congress has spoken clearly on the precise question at issue, the statutory language controls. *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984). If, however, the statute is silent or ambiguous, we defer to the agency's interpretation if it is reasonable. *Id.* at 843-44.

Of course, we begin this analysis with the text of the statute. *United States v. Gonzales*, 520 U.S. 1, 4 (1997). Although Midi maintains that the CSPA provisions covering refugees should apply to her, the text of CSPA offers no support for this contention. The provision of CSPA that Midi cites, which amended 8 U.S.C. § 1157, by its own terms only applies to children with a parent "granted admission as a refugee *under this subsection*." 8 U.S.C. § 1157(c)(2)(B) (2006) (emphasis added). The United States did not, of course, grant Midi's father admission "under this subsection"—the INA's general refugee provision—but rather under the separate HRIFA statute. CSPA does not incorporate or reference HRIFA. Therefore, we can only conclude that CSPA is silent as to whether it applies to HRIFA applicants.

In light of this silence, we must defer to the BIA's statutory construction so long as it constitutes a "permissible" interpretation of the statute. *See Saintha*, 516 F.3d at 251 (*quoting Chevron*, 467 U.S. at 843). Although it seems odd that Congress would extend special benefits to Haitian refugees while refusing to provide their children with the protections it affords to the children of many other refugees, we cannot find such a reading of CSPA impermissible. It may be that Congress thought Haitian refugees, by virtue of the streamlined HRIFA admission process, did not face the same processing delays as other asylum seekers. But regardless of Congress's reason, because we cannot conclude that the BIA has interpreted the statute unreasonably, we must defer to its construction under *Chevron*.

### V.

Midi next contends that denying her the protections of CSPA violates her constitutional right to equal protection under law. She argues that because CSPA benefits children of refugees from other nations—that is, those admitted under the INA's general refugee and asylum provisions—denying these benefits to her and other children of Haitian refugees unlawfully discriminates against them. This argument fails.

Although courts usually subject national-origin classifications to strict scrutiny, when such classifications involve unadmitted aliens in the immigration context, we subject them only to rational basis review. *See Appiah v. INS*, 202 F.3d 704, 709-10 (4th Cir. 2000). This is so because Congress has plenary power over immigration and naturalization, and may "permissibly set immigration criteria based on an alien's nationality," *Kandamar v. Gonzales*, 464 F.3d 65, 72 (1st Cir. 2006), even though such distinctions would be suspect if applied to American citizens. *See Mathews v. Diaz*, 426 U.S. 67, 78-80 (1976); *In re Longstaff*, 716 F.2d 1439, 1442-43 (5th Cir. 1983).

Midi has not demonstrated that Congress had no possible rational basis to deny CSPA protection to HRIFA applicants. Congress grants or denies many immigration benefits based on nationality, presumably to advance security, foreign relations, humanitarian, or diplomatic goals. We cannot say that Congress's decision to deny CSPA protection to HRIFA applicants lacks any rational basis.

### VI.

For the foregoing reasons, we hold that we have jurisdiction to consider Midi's legal and constitutional claims but that those claims lack merit. We therefore deny the petition for review.

*PETITION FOR REVIEW DENIED*