**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 17-1264**

RENE ALFREDO RODRIGUEZ-MANCIAS,

Petitioner,

v.

JEFFERSON B. SESSIONS III,

Respondent.

On Petition for Review of an Order of the Board of Immigration Appeals.

Argued: March 20, 2018                                          Decided: May 14, 2018

Before NIEMEYER and KING, Circuit Judges, and Leonie M. Brinkema, United States District Judge for the Eastern District of Virginia, sitting by designation.

Petition denied by unpublished opinion. Judge Brinkema wrote the opinion, in which Judge Niemeyer and Judge King joined.

**ARGUED:** Christina Augusta Wilkes, WILKES LEGAL, LLC, Takoma Park, Maryland, for Petitioner. Timothy G. Hayes, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Rachel C. Zoghlin, GROSSMAN LAW, LLC, Bethesda, Maryland, for Petitioner. Chad A. Readler, Acting Assistant Attorney General, Andrew N. O'Malley, Senior Litigation Counsel, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

Unpublished opinions are not binding precedent in this circuit.

BRINKEMA, District Judge:

Petitioner Rene Rodriguez-Mancias ("Rodriguez-Mancias"), a citizen of El Salvador, challenges an order of the Board of Immigration Appeals ("BIA") denying his applications for asylum and withholding of removal. To be eligible for either form of relief, Rodriguez-Mancias had to be able to demonstrate that he is unwilling to return to his native country because he has a well-founded fear of persecution on account of a protected ground, which he claimed was his membership in the particular social group of the nuclear family of his ex-girlfriend's daughter. Because we conclude that there is substantial evidence in the record supporting the BIA's conclusion that Rodriguez-Mancias is not actually a member of this social group, his petition for review will be denied.

I

Rodriguez-Mancias had a romantic relationship with a woman named Roxana in El Salvador. In January 2012, Roxana gave birth to a daughter, Madeleine, and in the months before and after Madeleine's birth, Rodriguez-Mancias believed that she was his child and acted as her father. His name was listed on her birth certificate; he provided her with diapers, milk, and food; and he saw her almost daily, although he never lived with Roxana or Madeleine. In March 2013, about a year after Madeleine was born, Rodriguez-Mancias decided to undergo a DNA paternity test because he "live[d] in a very small community and there were rumors going around that she wasn't [his] daughter," as well as because Roxana was "always evasive" about Madeleine's paternity. AR 120, 477-482. The DNA test revealed that Rodriguez-Mancias is not Madeleine's biological father;

3

however, even after learning that he was not Madeleine's father, he continued to provide for her and see her almost every day.

On May 17, 2013, approximately two months after the DNA test, Rodriguez-Mancias was playing soccer with his friends when an MS-13 gang member, Eduardo, along with three other MS-13 members, approached him.[1] Eduardo, who was carrying a knife, displayed his tattoos, including both gang tattoos and the names of Roxana and Madeleine, to Rodriguez-Mancias; told him that he was Madeleine's biological father; and warned him that he would kill him if he did not stay away from Roxana and Madeleine. After being threatened, Rodriguez-Mancias returned home and told his grandmother, with whom he lived, what had happened. She contacted family members, who reached out to a cousin, believed to be a member of MS-13. This cousin relayed to Rodriguez-Mancias's brother that Eduardo was seeking permission from MS-13 authorities to kill Rodriguez-Mancias and advised him to leave El Salvador as soon as possible.

Two weeks after the encounter with Eduardo, Rodriguez-Mancias fled El Salvador and made his way to the United States, which he entered in early June 2013. Since leaving El Salvador, he has had no further contact with Eduardo, Roxana, or Madeleine,

---

[1] Mara Salvatrucha, or MS-13, is a violent gang that has an active presence in El Salvador, among other places. *See Oliva v. Lynch*, 807 F.3d 53, 56-57 (4th Cir. 2015).

4

although he has periodically sent money to Roxana's mother, who now cares for Madeleine.[2]

After arriving in the United States, Rodriguez-Mancias was arrested by immigration authorities to whom he expressed a fear of returning to El Salvador. He passed an initial credible fear interview with an asylum officer, was issued a Notice to Appear, and was placed in removal proceedings. Through counsel, Rodriguez-Mancias conceded his removability but sought asylum, withholding of removal, and protection under the Convention Against Torture, arguing that he had suffered past persecution and would likely suffer future persecution in El Salvador because of his inclusion in the social group he defined as Madeleine's immediate family. On October 15, 2015, an Immigration Judge ("IJ") held a hearing, at which Rodriguez-Mancias and his brother testified in support of his applications for immigration relief. He also submitted a variety of sworn statements from individuals in El Salvador to support his testimony, as well as an expert report describing MS-13 violence and other evidence describing conditions in El Salvador.

At the conclusion of the hearing, the IJ issued an oral decision denying Rodriguez-Mancias's applications for relief. As the IJ recognized, to "be eligible for asylum, [Rodriguez-Mancias] must credibly demonstrate that he's a refugee," which means that he is "an alien unable or unwilling to return to his country because of a well-founded fear

---

[2] Roxana appears to have left Madeleine in her mother's care and begun cohabitating with Eduardo.

of future persecution, or that [he] has suffered past persecution[,] on account of [his] race, religion, nationality, membership in a particular social group, or political opinion." AR 51. He also observed that Rodriguez-Mancias must demonstrate that one of these five "protected grounds" would "be at least one central reason for the persecutor's actions against him" and that a "social group" is a group that is "composed of members who share a common or immutable characteristic," "defined with particularity," and "socially distinct [from] the society in question." AR 52.

Although Rodriguez-Mancias's testimony was found to be credible, the IJ determined that Rodriguez-Mancias had not suffered past persecution because no physical harm had occurred, the threat was made as a prospective threat, the conditions giving rise to the threat had appeared to have abated because Madeleine had been abandoned by Roxana, and Rodriguez-Mancias had not attempted to contact the police to report the threat. The IJ also determined that Rodriguez-Mancias was not threatened due to his membership in the claimed social group of Madeleine's nuclear family because he was not a member of that social group. The IJ based that finding on the evidence demonstrating that Rodriguez-Mancias had never lived with Roxana or Madeleine, was not the biological father of the child, and had not had any contact with Roxana since his move to the United States. He also considered evidence that there were rumors circulating in the community that Rodriguez-Mancias was not the child's father and that "the community didn't view [Roxana, Madeleine, and Rodriguez-Mancias] as the family." AR 59-60. Accordingly, the IJ denied Rodriguez-Mancias's application for

asylum, as well as his applications for withholding of removal[3] and relief under the Convention Against Torture.[4]

Rodriguez-Mancias appealed this decision to the BIA, which affirmed, agreeing with the IJ that Rodriguez-Mancias's evidence was insufficient to establish that his membership in any particular social group supported his fear of returning to El Salvador because the threat against Rodriguez-Mancias was made in the context of a personal dispute. The BIA also agreed with the IJ's determination that Rodriguez-Mancias had not established that he suffered past persecution because he "did not indicate he was ever physically harmed in El Salvador" and because "the threat he received from a gang member was not shown to constitute persecution." AR 3 n.1. Lastly, the BIA determined that Rodriguez-Mancias was not eligible for asylum based on being a member of Madeleine's family, because the threat "does not establish that [Eduardo] was motivated to harm members of the proposed group on account of their relationship to one another." AR 4. The BIA relied on Rodriguez-Mancias's testimony that he is not Madeleine's biological father, that the child did not reside with any of his family members, and that he

---

[3] Because the withholding of removal standard is more rigorous than the asylum standard, the IJ concluded that if Rodriguez-Mancias were ineligible for asylum, he would also be ineligible for withholding of removal. *See Camara v. Ashcroft*, 378 F.3d 361, 367 (4th Cir. 2004) ("Because the burden of proof for withholding of removal is higher than for asylum—even though the facts that must be proved are the same—an applicant who is ineligible for asylum is necessarily ineligible for withholding of removal . . . .").

[4] Rodriguez-Mancias has not appealed the determination that he is ineligible for relief under the Convention Against Torture.

"has had no further direct contact with anyone in the child's actual family"[5] to find that Rodriguez-Mancias was not a member of Madeleine's nuclear family. AR 4. As such, the BIA affirmed the IJ's determinations that Rodriguez-Mancias is not eligible for either asylum or withholding of removal.

In his petition for review of the BIA's decision, Rodriguez-Mancias argues that the BIA erroneously denied his application for asylum because he has suffered past persecution and does hold a well-founded fear of future persecution based on his membership in the social group of Madeleine's nuclear family. He also argues that the BIA failed to address whether the government of El Salvador would be willing to protect him and that the BIA applied the wrong causation standard when analyzing his application for withholding of removal.

## II

We review the factual findings of the BIA for substantial evidence, which means that the agency's findings are "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). Legal conclusions are reviewed *de novo*. *Crespin-Valladares v. Holder*, 632 F.3d 117, 124 (4th Cir. 2011). We may not vacate a denial of asylum unless it is "manifestly contrary to law." *Id.* (quoting 8 U.S.C. § 1252(b)(4)(C)). Where, as here, the BIA issues an opinion adopting and

---

[5] This appears to be a misreading of the record, as Rodriguez-Mancias credibly testified that he has maintained some contact with Madeleine's maternal grandmother, although he has had no contact with Madeleine.

supplementing the IJ's reasoning, the Court reviews both decisions. *Barahona v. Holder*, 691 F.3d 349, 353 (4th Cir. 2012).

To qualify for asylum, an applicant must demonstrate that he is "unable or unwilling to return to" his native country because of "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). To establish eligibility for withholding of removal, an applicant must demonstrate that his "life or freedom would be threatened" in his home country "because of [his] race, religion, nationality, membership in a particular social group, or political opinion." *Id.* § 1231(b)(3). Both the IJ and the BIA found that Rodriguez-Mancias had not met his burden of establishing persecution or a well-founded fear of persecution on account of a protected ground because he was not actually a member of Madeleine's nuclear family.

Rodriguez-Mancias argues that the "IJ and BIA erred as a matter of law by finding that [p]etitioner is not a member of the particular social group of nuclear family members of [Madeleine] simply because [p]etitioner is not Madeleine's biological father." Pet. Br. 19. According to Rodriguez-Mancias, non-biologically-related individuals may still be considered as part of a family because "[l]aw, policy, and social norms define family far more broadly than just blood relationships or civil contracts." *Id.* at 20.

Although Rodriguez-Mancias's argument is correct that family membership depends not only on genetics but also "on the nature and degree of the relationships involved and how those relationships are regarded by the society in question," *In re L-E-A*, 27 I. & N. Dec. 40, 43 (BIA 2017); *see also Cruz v. Sessions*, 853 F.3d 122, 125 (4th

9

Cir. 2017) (finding a nuclear family where two individuals "were never married" but "were considered a married couple by members of their community"), he wholly mischaracterizes the basis for the determination that he is not part of Madeleine's nuclear family. The IJ and BIA did not determine as matter of law that the lack of biological connection to Madeleine precluded his being included in her family. Instead, the evaluation of the biological evidence was only one factor in the analysis, which also included the uncontested facts that Rodriguez-Mancias never lived with Roxana or Madeleine, had been separated from Roxana for a period of six months even while he was living in El Salvador, had not had any contact with Roxana since leaving El Salvador, and had not had any direct contact with Madeleine herself, although he has had contact with her maternal grandmother. The IJ and the BIA also recognized that there were rumors in the community that Rodriguez-Mancias was not Madeleine's father, which indicated that the community did not view him as part of Madeleine's family. In addition, although not specifically referenced by the IJ or the BIA, the record below included evidence that Rodriguez-Mancias was unable to recount how much money he had sent back to El Salvador to provide for Madeleine or how often he sent payments. All of this evidence weighs against his claim of continued inclusion in Madeleine's nuclear family.

To counter this evidence, Rodriguez-Mancias points to a variety of pieces of evidence suggesting that he was—and is—a member of Madeleine's nuclear family, including that he is listed as her father on her birth certificate, that he acted as Madeleine's parent for the first year of her life, that he had provided for her to some

10

degree even before she was born, and that he has continued to communicate with her maternal grandmother and financially support Madeleine by sending money back to El Salvador. Pet. Br. 21-22. He also points to evidence that various specific members of Madeleine's community view Rodriguez-Mancias as Madeleine's father. *Id.* at 22.

Although there is some evidence supporting Rodriguez-Mancias's argument, there is significant evidence supporting the IJ's conclusion that Rodriguez-Mancias is not a member of Madeleine's immediate family. Given this conflicting evidence, no reasonable factfinder would be compelled to find that Rodriguez-Mancias was—or is—a member of Madeleine's nuclear family. As such, the factual findings of the IJ and the BIA that Rodriguez-Mancias is not a member of Madeleine's nuclear family will be affirmed. Because persecution on account of membership in a particular social group is a necessary element of Rodriguez-Mancias's applications for asylum and withholding of removal, the conclusion that he is not a member of the claimed social group is dispositive with respect to both of these applications.[6]

For the foregoing reasons, petition number 17-1264 is

*DENIED*.

---

[6] Given this conclusion, we decline to address Rodriguez-Mancias's other arguments.